*closed*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**ORIGINAL**

| | |
|---|---|
| **EDWARD L. WALSH,** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 03-269 Erie** |
| | ) |
| **WAL-MART STORES, INC.,** | ) |
| **Defendant.** | ) |

(13)

## OPINION

COHILL, D.J.

Edward L. Walsh has filed this action against defendant Wal-Mart Stores, Inc. ("Wal-Mart"), his former employer, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 3 Pa.C.S.A. § 951 *et seq.*

We have jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1331, 42 U.S.C. § 12111, and 29 U.S.C. § 626(c), and supplemental jurisdiction under 28 U.S.C. § 1367 over his state law claims.

Before the Court is defendant's motion for summary judgment with accompanying brief (Doc. 10) and appendix of exhibits. Plaintiff has filed a brief in opposition (Doc. 13) with supporting materials, to which Wal-Mart has replied (Doc. 16). Having now considered the submissions of the parties and the applicable law, for the reasons set forth below we will grant summary judgment in favor of the defendant.

### I. Background

Plaintiff Edward Walsh was employed by Wal-Mart as a people greeter in that company's Cranberry, Pennsylvania store. (Compl. at ¶ 9). He began that employment in June of 1999, when he was 75 years of age. (Compl. at ¶ 9; Walsh Dep. at 8). He was discharged on October 7, 2002. (Compl. at ¶ 13).

**People Greeter Job Description**

The general job description for a people greeter at Wal-Mart includes the following responsibilities:

- Ensuring good Customer service by greeting and thanking every Customer.

- Operating EAS equipment and other assigned tools.

- Following established Company guidelines for store cleanliness and safety standards, assisting Customers with returns, special need requests, and stocking shipping carts and supplies correctly, efficiently, and safely.

- Meeting and greeting all Customers entering and leaving the store.

- Knowing and understanding appropriate responses to emergency codes.

(Ex. C).

The job description also sets forth the essential functions of the people greeter position, and explains that a people greeter is expected to:

- Constantly greet and provide carts to Customers entering and exiting the store.

- Identify and promptly respond to returned items and inventory control concerns in accordance with Company procedures.

- Visually verify small print.

(Ex. C).

Walsh suffers from glaucoma, which impairs his vision, and is legally blind. (Compl. at ¶ 7). As a greeter, he needed to read receipts when customers brought items to return. (Walsh Dep. at 23). He testified that he had difficulty seeing the "fine line on the bottom of the cash register receipt (.)" He used a small magnifying glass to read the price and the item, and sometimes left his station to ask a cashier to read the smallest print. (Walsh Dep. at 19, 23, 36-37).

**Plaintiff's Job Performance**

Walsh alleges that his employer harassed him because of his age and his disability through a number of incidents.

- In December, 2001, co-manager Marc Antoine verbally reprimanded Walsh for failing to greet four customers. (Def.'s Statement of Material Facts ("SMF") at ¶ 13). Another greeter, Willia Swartzfager, may not have greeted every customer

who came into the store but was never reprimanded for that.  (Pl.'s SMF at ¶ 5).

- In February, 2002, Antoine gave Walsh a written reprimand for allegedly allowing a customer to enter the store with a "bb" gun that he was returning.  (Def.'s SMF at ¶ 13).

- As a result of that written warning, Antoine required Walsh to submit a detailed write-up of the ways he intended to improve himself.  (Def.'s SMF at ¶ 13).

- Antoine frequently shouted at Walsh in front of customers and co-workers, for "fabricated infractions of procedure, "stating that he was not performing his duties as a greeter.  Antoine would also stand outside the store and watch Walsh through the glass window while holding a note pad.  (Def.'s SMF at ¶ 13; Pl.'s SMF at ¶¶ 13, 14, 16).

- On several occasions when Walsh sought assistance from a cashier to read the small print on a receipt, Antoine or another supervisor yelled at him and told him not to leave his station.  Walsh's supervisors also complained about having to have other employees assist him.  (Pl.'s SMF at ¶¶ 13, 22).

- Antoine repeatedly told Walsh that he was "watching" him.  (Def.'s SMF at ¶ 13).

- In September, 2002, Parson and Robertson solicited or made false statements alleging that Walsh had engaged in acts of sexual harassment.  (Pl.'s SMF at ¶ 6, 24-30, 32).

Some of these incidents are reflected in plaintiff's job evaluations, which show that he generally met expectations, but that he fell below expectations on some of the people greeter job requirements.  In his first evaluation, dated August 31, 1999, Walsh received a "below expectations" in the category of "Opens door for Customers when appropriate."  (Ex. D).  On May 10, 2000, he received a "meets expectations" on the evaluation, but was told that he "[n]eeds to be more aggressive about checking peoples [sic] receipts & bags before they leave."  (Ex. E).

The May 5, 2001 evaluation stated that Walsh met expectations overall, but he received a "below expectations" rating in the areas of "Welcomes each Customer to Wal-Mart" and "Offers each Customer a shopping cart."  (Ex. F).

Walsh received an overall  "below expectations" rating on the evaluation performed on April 29, 2002.  In that evaluation, he was told that he must "greet every customer and ensure that they have a cart; pink sticker the returns [that] come in the front doors; ensure that the door is covered; and check security tags and receipts that are leaving the front doors."  (Ex. G).

Plaintiff's evaluation of August 2, 2002 shows he "meets expectations."  However, he received "below expectations" in the areas of "Welcomes each Customer to Wal-Mart," "Offers each Customer a shopping cart," and "Attaches return stickers to all merchandise."  The evaluation stated that Walsh "needs to check every package that comes in the front door" and "needs to greet each customer as they come into the store and offer them a cart."  (Ex. H).

Wal-Mart has a progressive discipline policy, "Coaching for Improvement."  Level One of the process, verbal coaching, notifies an employee that conduct or job performance does not meet Wal-Mart's expectations, and explains what needs to be done to correct the situation.  Level Two, written coaching, is used when verbal coaching has not been successful in changing the employee's behavior or performance.  Level Three is decision-making day.  This is the final opportunity for an employee to evaluate his or her behavior in view of Wal-Mart's expectations.(Policy Ex. J).

In accordance with Wal-Mart's "Coaching for Improvement" policy, Walsh received one verbal reprimand and one written reprimand because of his job performance.  (Ex. J).  On December 13, 2001, he received a verbal coaching for not greeting customers as they entered or left Wal-Mart and for not "pink-ticketing" returned merchandise.  (Ex. K).  On February 27, 2002, Walsh received a written coaching for failing to stop a customer who came into the store to exchange a gun.  A decision-making day was set for this incident.  (Ex. L).   Both coachings were given by acting store manager Marc Antoine.

After receiving these reprimands, plaintiff wrote a letter to the Wal-Mart headquarters in Bentonville, Arkansas in February 2002, alleging that he was being discriminated against and harassed.  (Walsh Dep. at 57).  Neither Wal-Mart nor the plaintiff have been able to locate this letter, but Wal-Mart assumes it was written for the purposes of its motion for summary judgment.

Sometime after this letter was written, the plaintiff alleges that the management of the Cranberry store began to solicit sexual harassment claims against him.

**Sexual Harassment Complaints against the Plaintiff**

In September of 2002, Wal-Mart received several complaints about the plaintiff from other

employees at the Cranberry store.

- Tina Roberts, a customer service manager, prepared a statement claiming that Walsh "placed his arm around my back and his hand on my right side running his fingers across my ribs as if counting them," and that this "made me very uncomfortable." "Ed has a tendency to try to hug me or put his arm around me," she stated. She found herself "dodging him" because "these actions make me feel extremely uncomfortable." Roberts stated that she "noticed him treating other female associates the same way." (Ex. M).

- Fran Smith, an assistant manager trainee, prepared a written statement explaining that while she was talking to a customer, "Ed came over to me and walked his fingers across my back and rested his hand on my bra." (Ex. N).

- Wendy Miller was plaintiff's supervisor. She wrote that "Ed Walsh places his arm around my shoulders & places his hand on my shoulder or arm each day. He also calls me gorgeous or beautiful daily. He does not offend me, however this could offend someone else if he did it to them." (Ex O).

- Dan Parson was responsible for loss prevention at the Cranberry store. Parson reported that he had witnessed Walsh "put his arm around" Elissa Karnes Meyers, a cashier, "and run his hand up and down her back." Parson reported the incident to assistant manager Mike Robertson, who asked him to write a statement. (Ex. P).

Meyers denied that the incident occurred as stated. Walsh and Meyers each testified that he would sometimes pat her back or give her a hug, and Walsh testified that Meyers and her husband were family friends. (Walsh Dep. Ex. B at 50; Meyers Dep. Ex. Q at 57).

Walsh admits that these complaints were made, but denies their veracity.

Wal-Mart has a policy prohibiting sexual harassment. (Policy Ex. R). Walsh received the policy as part of the employee handbook. (Handbook, Ex. S at 24; Ex. T; Walsh Dep. at 26).

**Plaintiff's Discharge**

Ben Stover became the new manager of the Cranberry store in early October, 2002, a few days before plaintiff's termination. Stover declared that he made the decision to terminate Walsh's employment in light of Wal-Mart's sexual harassment policy, after reviewing the statements of Wendy Miller, Fran Smith, Tina Roberts, and Dan Parson. (Ex. I). Walsh was discharged on October 7, 2002. (Ex. I; U). Stover further declared that he was not aware of a letter from the plaintiff to corporate headquarters. (Ex. I).

Wal-Mart did not replace Walsh after terminating his employment. (Scouten Declaration

Ex. V). Of the eleven greeters employed at the Cranberry store when Scouten gave her declaration, one, at 82, was older than the plaintiff, four were in their seventies, three were in their sixties, and one was under 40. (Ex. V).

Walsh filed this action after he was discharged. He alleges that he was subjected to a hostile work environment because of his age and his disability, that he was discharged in violation of the ADA and ADEA, and that he was discharged in retaliation for having written the letter to corporate headquarters.

## II. Summary Judgment Standard

Summary judgment is proper where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Childers v. Joseph*, 842 F.2d 689 (3d Cir. 1989). "Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A court considering summary judgment must examine the entire record in the light most favorable to the nonmoving party, and draw all reasonable inferences in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986). The court must not engage in credibility determinations at the summary judgment stage. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998) (*quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994)).

The moving party bears the initial responsibility for demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. This burden may be met by showing that there is an absence of evidence to support the non-moving party's case. *Id*. at 325. However, once the moving party has properly supported its motion, the opponent must provide some evidence that a question of material fact remains for trial. *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To meet this burden, the non-moving party may not rest upon mere allegations, general denials, or vague statements. *Bixler v. Central Penn. Teamsters Health &*

*Welfare Fund*, 12 F.3d 1292 (3d Cir. 1993). The party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matushita*, 475 U.S. at 486. In other words, the non-moving party must go beyond the pleadings and show, through its own affidavits or by the depositions, answers to interrogatories and admissions on file, the specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

### III. Analysis

Plaintiff brings claims under the ADEA and the ADA, federal employment discrimination statutes and the PHRA. The Third Circuit has held that the legal framework governing claims under the federal statutes also applies to PHRA cases. *Kelly v. Drexel University*, 94 F.3d 102, 105 (3d Cir.1996). The complaint does not include a discrete claim for hostile environment on the basis of either age or disability, but it emerges from the pleadings as a theory of recovery under both statutes, and is addressed in the submissions of both parties.

We will address defendant's motion for summary judgment on each of plaintiff's claims in turn, beginning with whether Walsh was subjected to a hostile environment on the basis of either age or disability.

### A. Hostile Environment

To establish a claim of hostile environment under the federal anti-discrimination statutes, a plaintiff must establish the following: (1) that the employee was a member of a protected class; (2) that the employee was subjected to unwelcome harassment; (3) that the harassment complained of was based upon membership in the protected class; (4) that the harassment was sufficiently severe or pervasive as to alter the conditions of employment and create an abusive working environment; and (5) that the employer knew or should have known about the harassment and failed to take prompt remedial action. *Walton v. Mental Health Assoc.*, 168 F.3d 661 (3d Cir. 1999) (assuming that a cause of action for harassment exists under the ADA).

An abusive working environment must be shown to be objectively hostile or abusive, and the plaintiff must also have perceived it as hostile and abusive. *Id.*, (quoting *Harris v. Forklift*

7

*Sys., Inc.*, 510 U.S. 17, 22 (1993)).

For purposes of this motion, it is undisputed that Walsh's age and impaired vision put him in the protected class for both the ADEA and the ADA. (Def.'s motion at 4, n. 2).

Plaintiff alleges that he was subjected to a hostile environment because of the following incidents:

Co-manager Marc Antoine's verbal reprimand for Walsh's failure to greet four customers; Antoine's written reprimand for allegedly allowing a customer to enter the store with a "bb" gun, and, after the incident, requiring Walsh to submit a detailed write-up of the ways he intended to improve himself; shouting at Walsh in front of customers and co-workers, and standing outside the store watching Walsh while holding a notebook; Antoine or another supervisor yelling at him and telling him not to leave his station; and Parson and Robertson soliciting or making false statements about sexual harassment.

Defendant first argues that Walsh cannot show that the incidents complained of occurred either because his vision was impaired or because of his age, and we agree. To survive summary judgment on the third element of a hostile environment claim, a plaintiff must point to facts from which a reasonable jury could find that the harassing incidents occurred because of his membership in a protected class. In this case, the record is devoid of any competent evidence that Marc Antoine or anyone else ever referenced his age or disability when criticizing or disciplining the plaintiff. Indeed, Walsh's own deposition testimony establishes that Antoine never referred to either when reprimanding him. (Walsh Dep. at 36-37, 58). Therefore, Walsh has failed to make out this element of his prima facie case.

Defendant further asserts that these incidents of alleged harassment fail to meet the *Harris* standard of severe or pervasive conduct. Under this standard, courts considering whether there is evidence of a hostile or abusive environment must consider all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

8

employee's work performance." *Walton*, 168 F.3d at 667 (quoting *Harris*, 510 U.S. at 22)).

We agree with the defendant that these incidents fall far short of showing severe or pervasive conduct under *Harris*. The incidents complained of occurred over a period of nine months, between December of 2001, when Walsh was reprimanded for failing to greet four customers, to September of 2002, when plaintiff alleges that false statements about him were solicited. A few incidents in nine months does not establish pervasive conduct for purpose of establishing a hostile environment claim, particularly where several of the incidents resulted from plaintiff's acknowledged failure to perform his job. The job description for the people greeter position required the plaintiff to greet and thank every customer entering and leaving the store. (Ex. C). Indeed, it is one of the essential functions of that job to "[c]onstantly greet and provide carts to Customers entering and exiting the store." (Ex. C). Furthermore, Walsh himself testified that Antoine told him "that my duty is to greet every single customer that comes in the door and everyone that goes out ...." (Walsh Dep. at 52).

Moreover, the write-up Antoine required after the bb gun incident is in accordance with Wal-Mart's progressive employee discipline program. Although Walsh insists that no one else had to do this, he points to no evidence to support that assertion and the procedure is part of the company's written policy.

As to plaintiff's contention that Parson and Robertson solicited statements that Walsh had sexually harassed other employees,[1] even though the plaintiff denies that it was sexual harassment, both he and Meyers testified that he did sometimes touch her. Parson was reporting what he had personally observed, and his observations echo those made by other employees.

Walsh's remaining complaints about co-manager Antoine watching him through the store window and sometimes shouting at him in front of customers or other employees, while apparently

---

[1] The complaint alleges that Marc Antoine "fabricated infractions of procedure," but plaintiff testified at his deposition that he believed it was Parson, because he wrote a statement reporting having witnessed plaintiff running his hand up and down Meyers' back. (Compl. at ¶ 12; Walsh Dep. at 62).

disturbing to the plaintiff, are neither severe nor pervasive enough to support a claim of hostile environment. It should not be unusual for an acting manager to watch the store's employees and be sure they were doing their jobs in accordance with Wal-Mart policies, and the plaintiff's evaluations show that he did not always meet the company's expectations. Defendant further explains Antoine's conduct by saying that he sometimes spoke loudly because he had a hearing problem, but even without such a reason Walsh has not met his burden of pointing to competent evidence that he experienced severe and pervasive harassment. Even when considering the totality of the circumstances, we find that Walsh has not met this element of his claim.

Since Walsh has failed to establish a prima facie case of hostile environment, we will grant defendant's motion for summary judgment on this point.

### B. Americans with Disabilities Act Claim

Count I of the complaint alleges disability discrimination in violation of the ADA. A related PHRA claim for "handicap discrimination" is alleged as Count II.

The ADA makes it unlawful to discriminate against a "qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 41 U.S.C. § 12112(a). A claim for discriminatory discharge in violation of the ADA must be analyzed under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973) and refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *Lawrence v. National Westminster Bank New Jersey*, 98 F.3d 61, 68 (3d Cir. 1996).

Under that rubric, a plaintiff alleging discrimination under the ADA must first set out a prima facie case of unlawful discharge by showing: (1) that he is disabled within the meaning of the ADA; (2) that he is otherwise qualified to perform the essential functions of his position with

or without reasonable accommodation;[2] and (3) that he has suffered an adverse employment decision as a result of discrimination. *Gaul v. Lucent Technologies*, 134 F.3d 576, 580 (3d Cir. 1998).

If a prima facie case is established, the burden then shifts to the defendant to provide a legitimate, non-discriminatory reason for the employment decision.

If that burden is sustained, to survive summary judgment the plaintiff must provide evidence "from which a factfinder could either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Simpson v. Kay Jewelers*, 142 F.3d 639, 644 (3d Cir. 1998) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).  A plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons"  that a reasonable jury could either disbelieve the reason or believe that unlawful retaliation was more likely than not the reason for the employment decision. *Id*. at 644 (quoting *Fuentes*, 32 F.3d at 764-65).

**Prima Facie Case**

For purposes of this motion, defendant agrees that Walsh is disabled within the meaning of the ADA because of his vision, and does not argue that he was unqualified for the position of people greeter.  (Def.'s Mot. Doc. 10 at 4, n. 3).  However, Wal-Mart asserts that summary judgment is proper because Walsh cannot demonstrate that he suffered an adverse employment decision as a result of discrimination.

Walsh contends that Swartzfager, a non-disabled employee, was treated differently than he was, and argues that this raises an inference of discrimination.  Plaintiff asserts that Wendy Miller, plaintiff's immediate supervisor, observed Swartzfager "hugging and putting his arms around customers and other employees" but that he was not disciplined or discharged for that behavior.

---

[2] Plaintiff has not presented a claim that Wal-Mart failed to accommodate his vision problem, and there is no evidence that he either sought or was denied an accommodation.

11

(Pl.'s Response ¶ 31). It is undisputed, however, that there were no complaints about Swartzfager's conduct, while other employees did complain about Walsh touching them. Therefore, these two employees were not similarly situated. Plaintiff has offered no competent evidence from which a reasonable jury could infer that he was discharged because of his vision, and has therefore failed to make out a prima facie case of discrimination under the ADA.

**Plaintiff's Evidence of Pretext**

Even if he had established his claim, however, plaintiff has failed to offer competent evidence that the employer's asserted non-discriminatory reason for the discharge was a pretext for discrimination, and that he was really discharged because of his vision disability.

Plaintiff points to what he regards as several inconsistencies in the defendant's explanation for the discharge. He asserts that Dan Parson's statement that he witnessed Walsh put his arm around cashier Elissa Karnes Meyers and "run his hand up and down her back" was refuted by Ms. Meyers herself. However, Parson was reporting what he observed, and both Walsh and Meyers testified that he would sometimes pat her on the back or give her a hug. (Walsh Dep. Ex. B at 50; Meyers Dep. Ex. Q at 57). He also challenges the timing of the statements, and argues that they were made while Marc Antoine was managing the store after Terry Dreihaup left the store manager's position and before Ben Stover became manager. This fact does not establish the sort of inconsistency or contradiction in the defendant's reason for plaintiff's discharge that must be raised to prevent summary judgment.

Walsh further argues that the allegations set forth in the statements were "improbable," and that the individuals who made them neither retained a copy nor filed charges with the EEOC. (Pl.'s Response at 18-19). Walsh's position that the statements were improbable, and his own testimony denying any improper touching, do not establish pretext. Pretext is not shown by evidence that "the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765. Put another way, the plaintiff must "present

evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." *Kautz v. Met-Pro Corporation* No. 04-2400, slip op. (3d Cir. June 17, 2005) (citing *Stanziale v. Jargowsky*, 200 F.3d 101, 106 (3d Cir. 2000)). Plaintiff has not met this burden. Moreover, we agree with the defendant that the significance Walsh attaches to the employees' failure to keep copies of their own statements is a bit disingenuous, given the fact that the plaintiff himself did not have a copy of the letter he wrote to the Wal-Mart corporate headquarters.

Plaintiff's remaining arguments on pretext simply express his own opinion that the statements made were false and that he was improperly discharged, without offering any competent evidence from which we may infer that Wal-Mart's stated reason for discharging him was really a pretext for discrimination under the ADA. Moreover, although Walsh argues strenuously that he was improperly discharged because of false statements, he makes absolutely no attempt to argue that he was discharged because of his disability. Indeed, the record is completely devoid of any evidence that the employer ever considered Walsh's vision in connection with his employment as a people greeter. We conclude that Walsh has offered no evidence to refute the defendant's proffered reason for his discharge or to raise a genuine issue of fact as to whether the stated reason was pretext, and therefore we will grant summary judgment in favor of the defendant and against the plaintiff on Counts I and II of the complaint.

## C. Age Discrimination in Employment Act Claim

Count III of the complaint alleges wrongful termination in violation of the ADEA. Count IV alleges "age discrimination – wrongful termination" under the PHRA.

Under the ADEA, "[i]t shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

A claim for discriminatory discharge on the basis of age must be analyzed under the same burden-shifting framework used for claims brought under Title VII and the ADA. Under that

13

framework, a plaintiff alleging age discrimination must first set out a prima facie case of unlawful discharge. To establish his claim, Walsh must show that (1) he is a member of a protected class, i.e., that he was 40 years of age or over; (2) that he was discharged; (3) he was qualified for the position in question; and (4) that he was replaced by a sufficiently younger person to create an inference of age discrimination. *Keller v. Orix Credit Alliance*, 130 F.3d 1101, 1108 (3d Cir. 1997) (en banc) (citing *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995)). A prima facie case raises a presumption of unlawful discrimination.

If the plaintiff succeeds in stating a prima facie case of unlawful discharge, the burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If defendant employer meets this burden the presumption of discrimination drops from the case. Plaintiff must then submit evidence from which the factfinder could reasonably either "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Keller*, 130 F.3d at 1108 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)).

Despite this well-established shifting burden of production, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

**Prima Facie Case**

It is undisputed that Walsh, who was hired when he was 75 years old, was within the protected class of the ADEA, and that he was discharged. Additionally, Wal-Mart does not contest Walsh's position that he was qualified for the job as a greeter.

Wal-Mart argues that summary judgment is appropriate because Walsh cannot establish the fourth element of his prima facie case, since he was not replaced.

Plaintiff admits that he was not replaced. (Pl's Response to Def's Material Facts Doc. 15 at ¶ 11). However, he asserts that this is not the only way to establish the fourth prong of a prima

14

facie case of age discrimination. Walsh's position is that another greeter, William Swartzfager, was observed hugging customers and other employees but was neither disciplined nor discharged for this conduct. (Pl.'s Br. at 13; Walsh Dep at 91-92; Miller Dep. at 24; Meyers Dep. at 23; Swartzfager Dep. at 15-17). Walsh argues that Swartzfager, who was approximately fifteen years younger than the plaintiff, was substantially younger and that this establishes the fourth prong of his prima facie case of age discrimination.

We have found no authority holding that replacement of the plaintiff is a necessary component of the fourth element, although such evidence certainly satisfies this prong under a variety of scenarios. *See, e.g., O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 312-313 (1996) (holding that an ADEA plaintiff need not show replacement by someone outside the protected class; "the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination"); *Pivirotto v. Innovative Systems, Inc.,* 191 F.3d 344, 356 (3d Cir. 1999) (collecting Third Circuit ADEA and ADA cases requiring proof of replacement by someone outside the relevant class).

However, courts considering whether a plaintiff has established the fourth prong of a prima facie case of age discrimination have long stressed that the requirements for this element are flexible, and have found them met under several different formulations. *Waldron v. SL Industries, Inc.,* 56 F.3d 491, 494 n. 3 (3d Cir. 1995) (citing *McDonnell Douglas,* 411 U.S. at 802 n. 14). *See, e.g., Pivirotto,* 191 F.3d at 354-357 (holding that a plaintiff alleging gender discrimination need not show that she was replaced by someone outside the protected class; plaintiff established the fourth element by showing that an existing male employee assumed her duties after she was discharged); *Torre v. Casio, Inc.,* 42 F.3d 825, 831 (3d Cir. 1994) (finding the element met by proof that a younger employee assumed the plaintiff's responsibilities when the employer decided not to replace him); *Olson,* 101 F3d 947, 951 (3d Cir. 1996) (finding the fourth element satisfied by evidence that after the discharge, the employer sought applicants with the plaintiff's qualifications, or that the position was filled by someone outside the protected class); *accord Matczak v.*

15

*Frankford Candy and Chocolate Company*, 136 F.3d 933, 939-40 (1997).

Perhaps because the factual circumstances of these decisions are so case-specific, the Third Circuit has more broadly stated that a prima facie case requires "evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion." *Pivirotto* 191 F.3d at 356 (quoting *O'Connor* 517 U.S. at 312*)*.

Using this broader formulation of the evidence necessary to establish the fourth element of a prima facie case of age discrimination, we must ask whether the circumstances surrounding Walsh's discharge give rise to an inference that his age affected Wal-Mart's decision to terminate his employment. We find that they do not.

To support his argument that Wal-Mart's decision to discharge him was discriminatory because the substantially younger Swartzfager was not terminated, Walsh refers us to *Showalter v. University of Pittsburgh Med. Ctr.*, 190 F.3d 231, 234 (3d Cir. 1999). Under *Showalter*, a reduction-in-force case, no particular age difference must be shown to satisfy the "sufficiently younger" standard, and the court found it established by the fact that the employer discharged the plaintiff while retaining employees who were eight and sixteen years younger. *Id.* at 234. We agree with Walsh that since Swartzfager was approximately fifteen years younger than the plaintiff, their age difference would satisfy *Showalter*. Their age difference, however, is not the issue in this case.

Even though Swartzfager was substantially younger than Walsh, plaintiff's argument ignores the undisputed fact that there were no complaints about Bill Swartzfager's behavior. This is not a case where the older of two similarly situated employees was discharged. In this case, the individuals who testified that they knew Swartzfager had hugged them or other employees or customers did not complain to management about his behavior.

Walsh has set forth no evidence from which a reasonable jury could infer that he was discharged because of his age, and thus the plaintiff has failed to establish the fourth element of his prima facie case.

16

**Wal-Mart's Legitimate Non-Discriminatory Reason for Plaintiff's Discharge**

Although we have concluded that Walsh has not made out a prima facie case of age discrimination, in the interest of completeness we will address the rest of the analysis of plaintiff's claim  We have no difficulty deciding that Wal-Mart has asserted a legitimate non-discriminatory reason for the discharge: the sexual harassment of other employees.  The burden now shifts back to the plaintiff to offer evidence from which a reasonable jury could find that this reason is a pretext for age discrimination.

**Plaintiff's Evidence of Pretext**

To survive summary judgment, Walsh must now point to competent evidence from which a reasonable jury could either "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Keller*, 130 F.3d at 1108 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)).  Proof of pretext need not include direct evidence of discrimination, but may be evidence from which "the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000).  To avoid summary judgment, a plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence. *Fuentes* 32 F.3d at 765.  The plaintiff's evidence of pretext must be such that the factfinder may reasonably infer that "each of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Fuentes*, 32 F.3d at 764.

Pretext is not shown by evidence that "the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765.

Wal-Mart asserts that Walsh was discharged because other employees filed statements

17

complaining that he had sexually harassed them.

Plaintiff argues that Wal-Mart "was motivated by plaintiff's age when it solicited false sexual harassment complaints against the plaintiff and then terminated plaintiff's employment." Compl. at ¶ 28. However, Walsh merely asserts that the complaints were known to be false, without pointing to any evidence from which a jury could reach this conclusion. He implies that the women who made written complaints against him were encouraged to do so by Wal-Mart management. This ignores the women's testimony that they had already complained about Walsh's conduct, and only afterward were asked to provide a written statement. (Tina Roberts Dep. at 17; Fran Smith Dep at 14; Wendy Miller Dep. at 19). The defendant may have asked them to put their complaints in writing, but this was only after the women had complained in person. Moreover, Wal-Mart's sexual harassment policy encouraged employees to report unwanted conduct, and to make a written statement. (Policy Ex. R).

Furthermore, whether the statements were themselves false is not the issue here. The statements were in Walsh's personnel file prior to his discharge, and store manager Ben Stover reviewed them and determined that the plaintiff should be discharged. Walsh has offered no competent evidence from which a reasonable jury could find that he was fired because of his age, and not because sexual harassment complaints had been made against him.

Since the plaintiff has failed to establish his claim of age discrimination, we will grant summary judgment in favor of the defendant and against the plaintiff on Counts III and IV of the complaint.

## D. Retaliation in Violation of the ADA and ADEA

In Count V of the complaint, plaintiff alleges that he was discharged in retaliation for having written a letter to Wal-Mart's Corporate Vice President of Personnel, complaining that he was being subjected to harassment by the management employees at the Cranberry store. Compl. at ¶ 36. Walsh alleges that he wrote this letter in February, 2002, and that an investigation followed. After the investigation, plaintiff asserts that his immediate supervisors, Mark and Kathy,

18

"became very cool and distant to the plaintiff." Compl. at ¶ 38. Mark and Kathy then solicited complaints of sexual harassment from female employees, "even though they were aware that plaintiff had not engaged in any inappropriate conduct." Compl. at ¶ 39. Walsh was terminated on the basis of these complaints on October 7, 2002, eight months after the letter was written.

To establish a claim of retaliatory discharge under either statute, an employee must show that: (1) he engaged in a protected activity; (2) the employer took an adverse employment action either after or contemporaneous with the employee's protected activity; (3) a causal connection between the protected activity and the adverse employment action. *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 197 (3d Cir. 2003). If a plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment action. *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). If that burden is met, the plaintiff must produce evidence showing that "retaliatory animus played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of the process." *Id.* To survive summary judgment, a plaintiff must submit evidence that allows the factfinder "reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action." *Fuentes*, 32 F.3d at 764.

**Prima Facie Case**

Defendant apparently concedes that the first two elements of plaintiff's prima facie case have been met, and argues that summary judgment is appropriate because there is no evidence of causation between the letter and Walsh's discharge.

In this jurisdiction, temporal proximity between the protected act and the alleged retaliation is sufficient to create an inference of causation for the purposes of establishing plaintiff's prima facie case. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000). The timing of the adverse employment action, however, must be "unusually suggestive" of retaliatory motive. *Shaner v. Synthes*, 204 F.3d 494, 505 (3d Cir. 2000). The mere fact that a plaintiff is discharged at

19

some point  following the protected conduct is not sufficient to show causation.  *Robinson v. City of Pittsburgh*, 120 F.3d, 1286, 1302 (3d Cir. 1997).  *Compare Jalil v. Avdel Corp.*, 873 F.2d 701 (3d Cir. 1989) (finding causation when plaintiff was discharged two days after the employer received  EEOC claim), with *Krouse*, 126 F.3d at 503 (concluding that nineteen months was too great a time span to suggest a causal connection).

In this case, the plaintiff was not discharged until eight months after he wrote the letter complaining that he was being discriminated against.  We find that this timing alone does not  raise an inference of causation for purposes of Walsh's retaliation claim.

However, it is well established that where temporal proximity alone cannot give rise to an inference of causation, it may be considered along with other circumstantial evidence to establish that the employer developed a "pattern of antagonism" toward the plaintiff after the protected conduct.  *Farrell*, 206 F.3d at 280-81 (quoting *Kachmar v. Sungard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir. 1997)).   We must look to the record as a whole in determining whether the plaintiff has set forth evidence from which causation may be inferred.

Plaintiff attributes a pattern of antagonism to acting store manager Marc Antoine.  He cites to the incidents complained of in his harassment argument, including Antoine's verbal and written reprimands, yelling at him, and watching Walsh through the store window – incidents which led him to write the letter.  Walsh argues that the company took no action against him while Terry Dreihaup was the store manager, because he and the plaintiff got along.  In September of 2002, during the interim period between Dreihaup leaving and the new manager, Stover, taking over, Antoine was acting manager.  Antoine was the subject of plaintiff's letter of complaint to the corporate office, and, plaintiff submits, he instigated the complaints of sexual harassment which led to Walsh's discharge.

Plaintiff's position does not establish causation.  We have previously concluded that the incidents Walsh sets forth did not occur because of his age or because his vision was impaired.  Indeed, the plaintiff testified that Antoine never referred to either his age or any impairment when

20

reprimanding him. (Walsh Dep. at 36-37, 58). Plaintiff's argument that Antoine's conduct shows a pattern of antagonism and establishes causation is flawed in two additional respects. It ignores the fact that the individuals themselves complained about Walsh's conduct, and that Antoine then asked them to write up their complaints. Moreover, there is no evidence that Stover, the store manager who made the decision to terminate Walsh's employment as a people greeter, even knew that Walsh had written the letter. Stover's affidavit states that he was not at the Cranberry store in February 2002, did not arrive there until the beginning of October 2002, and was not aware that the plaintiff had written a letter alleging harassment and discrimination. (Ex. I).

We find there is no evidence that Walsh's letter was a factor in the decision to terminate his employment, and that he has failed to make out a prima facie case of retaliatory discharge.

**Plaintiff's Evidence of Pretext**

Even assuming for purposes of providing a complete analysis of Walsh's retaliation claim that he has established a prima facie case, he offers no competent evidence from which a reasonable jury could conclude that Wal-Mart's decision to discharge him was motivated by discriminatory animus. As we have said, Stover was not even aware that Walsh had written the letter when he fired him because other employees had complained about his conduct.

No inference of discriminatory animus can be drawn from these facts. Accordingly, we will grant summary judgment in favor of the defendant and against the plaintiff on Count V.

## IV. Conclusion

For the reasons set forth above, we find that the plaintiff has failed to establish his claims of harassment, violations of the ADA or the ADEA, or retaliatory discharge. No material issues of dispute fact remain for trial, and we will grant summary judgment in favor of the defendant and against the plaintiff on each of plaintiff's claims. An appropriate Order follows.

_June 28, 2005_
Date

_Maurice B. Cohill, Jr._
Maurice B. Cohill, Jr.
Senior United States District Judge

cc:    Counsel of record

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

EDWARD L. WALSH,                    )
                                    )
    Plaintiff,                      )
                                    )
    v.                              ) Civil Action No. 03-269 Erie
                                    )
WAL-MART STORES, INC.,              )
                                    )
    Defendant.                      )

## ORDER

AND NOW, to-wit, this _____28th_____ day of June, 2005, for the reasons set forth in the accompanying Opinion, it is hereby ORDERED, ADJUDGED, and DECREED that defendant's motion for summary judgment (Doc. 10) be and hereby is GRANTED.  Summary judgment be and hereby is entered in favor of the defendant Wal-Mart Stores, Inc. and against the plaintiff Edward L. Walsh.  The Clerk of Court be and hereby is directed to mark this case as "closed."

Maurice B. Cohill, Jr.
Senior United States District Judge

cc:    Counsel of record

22