NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-3584
_____

EDWARD L. WALSH,

                  Appellant

v.

WAL MART STORES INC.

_____

Appeal from the
United States District Court for the
Western District of Pennsylvania
(D.C. No. 03-cv-00269E)
District Judge: The Honorable Maurice B. Cohill
_____

Submitted Under Third Circuit LAR 34.1(a)
September 29, 2006
_____

Before: MCKEE and AMBRO, Circuit Judges, and
RESTANI*, Judge

(Filed: October 2, 2006)
_____

OPINION
_____

_____
    *Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

RESTANI, Judge.

Plaintiff-Appellant Edward L. Walsh ("Walsh") is a former employee of Defendant-Appellee Wal Mart Stores Inc. ("Wal-Mart"). Walsh claims that the termination of his employment by Wal-Mart was motivated by retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et. seq.. The District Court granted Wal-Mart's motion for summary judgment. We will affirm.

## I. Procedural and Factual Background

On October 7, 2002, Walsh's employment at Wal-Mart's Cranberry, Pennsylvania store was terminated by Wal-Mart on the basis of four complaints from employees alleging acts of sexual harassment by Walsh. Walsh had been employed as a people greeter in the store since June 1999, and was responsible for greeting and thanking customers, providing shopping carts and other customer service, identifying returned items in accordance with company procedures, and visually verifying customers' receipts.

Walsh's job performance came into question following verbal and written reprimands in December 2001 and February 2002 for failing to greet customers and properly mark returned merchandise, and for failing to stop a customer who brought a BB gun into the store for exchange. These incidents were also reflected in Walsh's performance evaluations, which stated that he generally met expectations, but was "below expectations" on some requirements.

Wal-Mart follows a sequenced discipline policy when an employee's conduct falls

below company expectations. This policy is implemented according to the severity of conduct and the recurrence of poor performance. It follows three stages, including verbal "coaching," written reprimand, and "decision day," which serves as a final opportunity to evaluate performance and may result in termination of the employment. As a consequence of his failure to stop the customer carrying a BB gun into the store, a "decision day" was scheduled for Walsh, and he was required to submit a plan for improvement.

After receiving these reprimands, Walsh submitted copies of a hand-written letter to Wal-Mart's corporate headquarters in February 2002, alleging discrimination and harassment by the managers of the Cranberry store.[1] In the letter, Walsh claimed that he was being unfairly targeted for discipline and that the managers were creating a hostile work environment.

In September 2002, Wal-Mart received four complaints from employees in the Cranberry store alleging acts of mild sexual harassment by Walsh. Three of the complaints were made by purported victims of the harassment, and the fourth was made by a coworker who claims to have witnessed Walsh inappropriately touch a female employee. Walsh admits that these complaints were made, but denies their veracity. Walsh was subsequently terminated for failure to adhere to Wal-Mart's stated policy against sexual harassment. Ben Stover, a new manager at the Cranberry store, declared in an affidavit that his decision to terminate Walsh was made as a result of Walsh's apparent violations of Wal-Mart's sexual

---

[1] Although neither party has been able to locate this letter, Wal-Mart has not contested its existence for the purposes of summary judgment.

harassment policy, and that at the time of the termination he was unaware of Walsh's letter to Wal-Mart headquarters.

To the contrary, Walsh asserts that the complaints were solicited by Wal-Mart in order to justify his termination. Walsh claims that his termination was in retaliation for the letter to Wal-Mart headquarters, and offers testimony of an associate at Wal-Mart who was the subject of the fourth complaint. Her testimony alleges that managers of the store had solicited the claims against Walsh, and that she had not been harassed by him as described in the complaint submitted by her coworker.

Walsh filed suit against Wal-Mart in the District Court for the Western District of Pennsylvania, claiming age and disability discrimination and retaliation in violation of the ADA, ADEA, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq. The district court granted summary judgment in favor of Wal-Mart on all claims. Walsh appeals only on the retaliation claims under the ADA and ADEA.

## II. Discussion

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review a grant of summary judgment de novo and apply the same standard as the District Court. MBIA Ins. Corp. v. Royal Indem. Co., 426 F.3d 204, 209 (3d. Cir. 2005). Where the non-moving party would bear the burden of proof at trial, the moving party must indicate a lack of evidence on an element essential to the claim, and the burden then shifts to the nonmoving party to demonstrate a triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

To establish a claim of unlawful retaliation in violation of the ADA and ADEA, a

plaintiff must show: 1) protected activity by the employee; 2) adverse employment action by the employer; and 3) a causal connection between the protected activity and the adverse employment action. See Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995). In this case, only the third element is at issue.[2] To sustain his claim of retaliation, Walsh must be able to produce evidence of a causal connection between his February letter to Wal-Mart headquarters and the termination of his employment almost eight months later.

Proof of causation may depend on three types of evidence: temporal proximity, a pattern of antagonism by the employer in response to the protected activity, and the employer's knowledge of that activity. While evidence of only one factor is generally insufficient to establish causation, evidence of all three is not necessary, so long as the claim reasonably supports an inference of causation. See Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997), abrogated on other grounds by Burlington No. & Santa Fe Ry. Co. V. White, 126 S. Ct. 2405 (2006); see also Krouse v. American Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

In the present case, Walsh fails to establish causation on the basis of temporal proximity. The fact that his termination occurred after the letter is not sufficient to infer a causal link, and the elapsed period of eight months is not "'unusually suggestive' of retaliatory motive." Krouse, 126 F.3d at 503 (quoting Robinson 120 F.3d at 1302).

In the absence of temporal proximity, causation may be established by a "pattern of

---

[2] For the purposes of summary judgment, Wal-Mart conceded that the first two elements of the test have been met. See Appellee's Brief at n.2.

antagonism" tending to show causation between the protected act and adverse employment action. Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997) (quoting Robinson v. Se. Penn. Transp. Auth., 982 F.2d 892, 895 (3d Cir. 1997). Although the facts of this case present a tense employment situation in which numerous reprimands and aggressive monitoring of Walsh may have been excessive, there is no evidence to suggest that these actions arose in response to Walsh's letter, or even that the situation worsened after the submission of the letter. In order to establish a causal link, a pattern of antagonism must demonstrate retaliatory motive on the part of the employer. The evidence presented in this case does not suggest such a link.

Finally, causation may be supported by evidence that the employer knew of the protected activity and acted with retaliatory motive. McGorrian v. E.M.S.A., 85 F. App'x 1, 3 (3d Cir. 2003) (not precedential); see also Wrighten v. Metro. Hosps., Inc., 726 F.2d 1346, 1354 (9th Cir. 1984). In the present case, there is no evidence that Mr. Stover, the manager who made the decision to terminate Walsh's employment, even knew of the letter. Absent evidence that the decision-maker had knowledge of the protected activity, "a substantial gap [exists] in any causal chain suggested [even] by temporal proximity." McGorrian, 85 F. App'x at 4. Without evidence to show that Walsh's letter was a factor in the decision to terminate his employment, there is no triable issue of fact as to the element of causation.

Moreover, even if a prima facie case of retaliation could be established by showing causation, Walsh has not presented evidence to demonstrate that Wal-Mart's stated reason

for terminating his employment was pretextual. According to Wal-Mart's sexual harassment policy, the complaints against Walsh were sufficient to justify immediate termination. Walsh's prior progression through Wal-Mart's disciplinary steps also indicates that an additional infraction, even less serious than sexual harassment, would have been enough to justify his termination. Although Walsh suggests that these reasons were also based on pretextual grounds, his evidence fails to support such an assertion.

Accordingly, we will affirm the grant of summary judgment in favor of Wal-Mart.

_____